54 CCPA

**Application of Louis BLUM.**
**Patent Appeal No. 7766.**

United States Court of Customs
and Patent Appeals.
April 6, 1967.

FIG. 1

James C. McConnon, Philadelphia, Pa., John F. Smith, Washington, D. C., for appellant.

Joseph Schimmel, Washington, D. C. (Fred W. Sherling, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, SMITH and ALMOND, Judges.

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection of the claim in appellant's application serial No. 67,307, filed October 30, 1961, for "Design for Handrail Unit."

The "handrail unit" embodying the design sought to be patented, which is the configuration of the goods, is illustrated in the two figures of the application drawing to which we have added, in Fig. 2, the line x-x. Fig. 1 was amended to comply with the requirements of the examiner not material to our discussion so we have not shown the amendment.

FIG. 2

The principal issue is obviousness under 35 U.S.C. § 103 in view of the single reference:

Blumcraft Aluminum Railings Catalog, M–57, c. 1956, pages 16, 21, and 25

The claim reads:

> The ornamental design for a handrail unit, as shown and described.

The words "and described" were added at the request of the examiner along with a sentence in the specification, also suggested by him, reading: "The dominant features of my new design reside in the portions shown in full lines." These additions were made because the examiner first objected to the inclusion in the drawings of the handrail supports shown in broken lines. He also objected that the broken line showings were not consistent. Applicant responded that the design of Fig. 2 was a minor modification of the design shown in Fig. 1 and declined to remove the broken line showings. Thereafter the examiner held the claim to be indefinite under 35 U.S.C. § 112 "in that the dominant features of the claimed design have not been pointed out in the specification." He said this rejection could be avoided by stating in the specification that: "The dominant features of my new design reside in the portions shown in full lines." He also said, "The word *and described* should then be inserted in the claim after 'shown'." Appellant made these changes and the examiner then gave his final rejection based on obviousness in view of the reference catalog pages. Appeal to the board followed.

These facts have led to internal Patent Office disagreement over what design is being claimed. At argument, appellant said this is a major issue in the case. The examiner's answer states:

> The herein disclosed and claimed design relates to a handrail unit comprising a handrail, a post, and a connecting bracket, as best shown on the drawing. As stated in the specification, the *dominant features* of the design are shown in full lines, namely the handrail per se. *The claim is directed* to two embodiments of the design wherein the handrail is attached to either the top (Fig. 1) or the side (Fig. 2) of the post. [Emphasis ours.]

The board does not so view the matter. Its opinion states:

> We note at the outset that the broken or dotted line showing in design drawings is *an immaterial part of the design* as to specific shape or configuration. It only indicates the general article with which the *dominant features* of the design shown in full lines are associated. Manual of Patent Examining Procedure, Section 1503.02; In re Wise [52 CCPA 936, 340 F.2d 982], 144 USPQ 354. It is, therefore, *immaterial* to the patentability of the instant case whether the supporting means for the rail are of the specific form shown in Figure 1 or Figure 2. [Emphasis ours.]

As it happens, all of the supporting structure is disclosed in the reference relied on and therefore it can make no difference to the outcome but we have troubled ourselves to set forth this disparity of views about what is being claimed because the debate is carried forward into the briefs before us and because if the Patent Office does not more rigorously enforce some sort of standardization about the meanings of drawings in design cases, chaos will result. When the words of the formal claim, read on the drawings in the light of the specification, convey one meaning to the examiner who specializes in design patents and something quite different to the three members of the board, how can the claim be said to meet the statutory requirement of definiteness?

We venture to suggest that the examiner was on the right track when he requested removal of the broken lines; that if the applicant, however, wished to insist that they represented parts of the design *sought to be patented* they should have been converted to full lines; and that they were either part of the design or they were not and it was not in the interest of clarity of claiming to insert the "dominant feature" statement under the circumstances of this case.

A clear description not having been arrived at in the Patent Office by appropriate proceedings, we are faced with an examiner's rejection based on one assumption about what is claimed and a board affirmance of it based on an entirely different assumption, together with much debate about whether the MPEP is or is not binding as law and the significance of our opinion in the *Wise* case wherein we held that dotted lines showings are not part of the claimed design. Appellant at argument asked that we overrule that holding.

▬▬▬ Dotted and broken lines may mean different things in different circumstances and all we wish to say here is that in each case it must be made entirely clear what they do mean, else the claim is bad for indefiniteness under 35 U.S.C. § 112. It is the examiner's responsibility to obtain such definiteness. A "dominant feature" statement is not calculated to obtain it. Neither is the wording of the Manual[1] as there are *no* portions *of a design* which are "immaterial" or "not important." A design is a unitary thing and all of its portions are material in that they contribute to the appearance which constitutes the design. There is a distinction to be observed between parts of the total *article illustrated,* in which a new design is embodied, and parts of that article which embody none of the *design.* Such a part is, presumably, what the Manual means by the reference to "an immaterial part of the design." Actually, it is *no* part *of* the design but a part of the *article* unrelated thereto. It is environment only. The distinction should also be maintained between *the design* and its *environment.* It is fatal to clarity to consider the latter as any part of the former, as the Manual appears to do.

In view of the nature of the reference relied on in this case we shall proceed to dispose of the issue of patentability on its merits though we have no idea what is intended by the expression "handrail unit" in the claim.

1. MPEP—Par. 1503.02 Drawing [In part, all emphasis ours]

The necessity for good drawings in a design application cannot be over-emphasized. As *the drawing constitutes substantially the whole disclosure of the design,* it is of utmost importance that it be so well executed both as to clarity of showing and completeness that *nothing* regarding the shape, configuration and surface ornamentation of the article sought to be patented is left to conjecture.

In general, the showing should be strictly confined to the article on which design patent protection is sought and no additional disclosure in the nature of structure to illustrate environmental use or association with other apparatus *not an actual part of the design,* is ordinarily permitted. Only in those cases where clarity of disclosure would be greatly sacrificed is such *extraneous* showing allowed, and *in such cases* it is permitted only by showing the same *in dotted lines* with a statement inserted in the specification to the effect that the *dotted line showing is for illustrative purposes only.*

Dotted or broken line showing is *also* employed to show such portions of the article claimed which are *not important.* Such a showing should be explained in the specification by a statement that the *dominant features* of the design reside in the portions shown in full lines. In every case dotted line showing is notice that the portion so shown is an *immaterial* part of the design.

The identical supporting structures for handrails as shown in broken lines in Figs. 1 and 2 are clearly shown in the Blumcraft catalog. Indeed they would appear as though copied out of that catalog which shows a variety of handrails per se indifferently mounted thereon according to the desires of customers. The catalog also shows, on page 25, a "wood handrail" (no material is mentioned in this application) the cross-sectional shape of which is identical with that portion of the handrail in Fig. 2 above our line x-x. Such a rail in combination with either of the supporting structures shown in broken lines is therefore an old combination. Assuming, arguendo, that the supports are part of the claimed design,[2] the issue on the facts before us is whether it would have been obvious to modify the shape of the rail by adding the portion below the line x-x. Conceding that to do so would produce an appearance which is novel in the strictest sense of the word, the rejection here is not for want of novelty but for obviousness. We think the change is so slight as to be de minimis and the appearance would be so nearly the same as to fall within the realm of the obvious. The top side of the rail would have the identical appearance. Really the only difference, then, is the degree of flattening of the bottom side to which the mounting brackets are attached, or, looked at another way, the vertical thickness of the rail.

The decision of the board is affirmed.

Affirmed.

WORLEY, C. J., concurs in the result.

2. It appeared to be appellant's position at oral argument that though the supports were old, the rail per se was a novel element, and because of the novel element a new combination had been invented which produced a new over-all visual effect. As we view it, even in designs, the changing of one element in an old combination does not necessarily produce a new patentable combination. The only change in appearance possible *here* is the appearance of the rail per se.