**Application of Hajo ZAHN.**

**Appeal No. 79–560.**

United States Court of Customs and Patent Appeals.

Feb. 21, 1980.

Paul J. Lerner, New Haven, Conn., attorney of record, for appellant.

Joseph F. Nakamura, Washington, D.C., for the Commissioner of Patents; Harry I. Moatz, of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN and MILLER, Associate Judges, and WATSON,* Judge.

RICH, Judge.

This appeal·is from the decision of the Patent and Trademark Office Board of Appeals (board) affirming the examiner's rejection under 35 U.S.C. § 171 and entering a new rejection under 35 U.S.C. § 112 of the single claim of design patent application serial No. 611,034, filed Sept. 8, 1975. We *reverse.*

---

* The Honorable James L. Watson, Judge, United States Customs Court, sitting by designation.

## BACKGROUND

### The Application

Zahn's claimed invention is an ornamental design *for* a drill tool. Figs. 1–4 of the application drawings are:[1]

*FIG-2*

*FIG-4*

*FIG-3*

*FIG-1*

Fig. 1 is an elevation of a drill bit, Fig. 2 is a top end view, Fig. 3 a section on the line 3–3 of Fig. 1, and Fig. 4 is a partial elevation from the right side of Fig. 1.

Involved here are the propriety of using dotted or broken lines in design patent drawings, section 1503.02 of the Manual of Patent Examining Procedure (MPEP) as amended, supposedly to comply with statements this court made in *In re Blum,* 374 F.2d 904, 54 CCPA 1231, 153 USPQ 177 (1967), other sections of Chapter 1500 of the MPEP, the construction of 35 U.S.C. § 171, and the distinction, largely disregarded by the PTO in this case, between a design *for* an article of manufacture and the article itself.

---

1. There are 4 other figures showing a "second embodiment" which are not germane to the issues here. The PTO has said nothing about them.

It will be observed that the above figures show a drill bit of the masonry drill type, the shank portion being shown in full lines and the twist-drill portion in broken lines. The drill bit is assumed to be integral—all in one piece.

The application as filed indicated in its title that it sought protection for a design "for the Shank of a Drill Bit." The original claim, in the prescribed form long required by 37 C.F.R. 1.153(a),[2] read:

The ornamental design for a Shank of a Drill Bit as shown and described.

The description in the specification read:

The phantom representation of the cutting portion of the drill bit is made in the drawings merely for the purpose of illustrating the type of cutting portion that may be formed integral with the shank portion to form the drill bit.

This must be taken together with the description of Fig. 1 which initially read:

FIGURE 1 is a side elevational view of the shank of a drill bit illustrating one embodiment of the new design and showing the cutting portion of the drill bit in phantom.

The oath, using the title in the customary way, said that applicant had invented the described design for a shank of a drill bit. So did a second oath required by the examiner to correct an omission.

*Examiner's Actions*

Having made it crystal clear he described and desired to patent a design for a drill bit shank, appellant encountered, in the first office action, opposition from the examiner, who rejected the claim under 35 U.S.C. § 112 solely for the following reason:

Appearance of claimed article indefinite as a result of the failure to disclose a complete article of manufacture in full lines. Broken line disclosure is not claimed, note M.P.E.P. 1503.02 and *In re Blum*, 153 U.S.P.Q. 177.

Appellant responded, evidently after study of *Blum*, without changing his drawing, by amending his description of it so it read (changed matter emphasized):

The phantom representation of the cutting portion of the drill bit is made in the drawings merely for the purpose of illustrating the *environment in which the shank of this invention is used. The structure shown in broken lines is not part of the design sought to be patented.*

He cited the provision of MPEP 1503.02 expressly permitting the use of broken lines to show *environmental* structure and reiterated that the cutting part of the article shown "does not embody the design," consistent with his claim that his design was for a shank portion of a drill bit.

The examiner countered with his second action, dropping his § 112 indefiniteness rejection and making a new one based on the principal design patent statute, 35 U.S.C. § 171, which reads in full:

§ 171 *Patents for designs*

Whoever invents any new, original and ornamental design for an article of manufacture may obtain a patent therefor, subject to the conditions and requirements of this title.

The provisions of this title [Title 35] relating to patents for inventions shall apply to patents for designs, except as otherwise provided.

Citing § 171, his entire explanation of the rejection was:

Claim rejected as failing to be directed to discrete article of manufacture. Twist drills are one article of manufacture having shank portions, which are not separate elements, separately protectable as articles of manufacture. Situation here is generally analogous to a screwdriver having a blade and a shank portion.

In an evident (and in our view mistaken) effort to comply with the examiner's views of the law, appellant responded by amendments of which he said:

The title, specification and claim have been amended to recite a complete article

---

**2.** In pertinent part reading, "The claim shall be in formal terms to the ornamental design for the article (specifying name) as shown, or as

shown and described. More than one claim is neither required nor permitted."

of manufacture rather than merely a portion thereof.

He thoroughly amended his specification and claim by deleting all references to shank of a drill bit and substituting "Drill tool" or "tool" while leaving his drawings untouched.

The examiner's response was a final rejection saying:

The rejection of the claim as failing to be directed to a discrete article of manufacture under 35 U.S.C. § 171 has not been shown to be in error and is consequently repeated and made *final*.

The claim now reads in its present form on appeal:

The ornamental design for a Drill tool or the like as shown and described.

The thus frustrated applicant filed a request for reconsideration and later appealed to the board arguing in vain that a "Drill tool" is in fact a "discrete article of manufacture." The examiner's Answer on appeal asserted, nevertheless, that the claim "was in fact the same claim as originally filed" because "the claim * * * is the drawing—no more and no less" and is therefore still directed to the shank of a drill tool because the cutting portion, shown in phantom, is "disclaimed" in the special description. He argued for his rejection on the sole ground that the claim does not conform to § 171 because it is not directed to "a discrete article of manufacture." Apart from the statute, the only authority cited by the examiner to support his position was a single decision by the Board of Appeals in 1932, *Ex parte Northup*, 24 USPQ 63, which, he opined, states the law as it has been ever since. The solicitor said at oral argument he knows of no other case.

*The Board Decisions*

The case was fully briefed before the board and orally argued not only by appellant but also by the examiner. In a very detailed opinion, the board not only af- firmed the examiner's § 171 rejection but added a new rejection under 37 C.F.R. 1.196(b) based on § 112.

In the first part of its opinion, sustaining the examiner, the board included the entire specification and claim as amended, 35 U.S.C. § 171, reported on what appellant and the examiner had argued at the hearing, quoted at length from this court's *Blum* opinion, and discussed the Commissioner's Notice of February 26, 1969, 860 O.G. 999, and amendment of MPEP 1503.02 which resulted from *Blum* and which the examiner had said he was trying to follow. The board then stated its reasons for sustaining the examiner in the following paragraph:

In view of *our conclusion* that *only the shank portion*, rather than the entire tool, *is being claimed*, we feel constrained by *Blum* (*supra*) to hold that a design patent cannot properly be granted for the ornamental design of a portion only of an article of manufacture. [Emphasis, except "supra," is ours.]

In connection with this statement, the board had said earlier in its opinion:

During the hearing, the examiner stated that sufficient views are present [in the drawings], he understands how to make and use the illustrated tool and that *he knows the metes and bounds of the subject matter appellant is seeking to claim.* The examiner characterized the claim as covering only the shank portion * * *. [Emphasis ours.]

Thus, both the examiner and the board said that they knew what was being claimed and that the design claimed was for only the shank portion of a drill tool or the like. (The significance of this will appear in our consideration of the board's new rejection.)

We shall not attempt to summarize the board's explanation of its new rejection, which is grounded on § 112, second paragraph,[3] but set it forth in full:

---

**3.** 35 U.S.C. § 112, second paragraph, reads:

The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

35 U.S.C. § 171 makes this applicable to design patent applications, except as otherwise provided, and the Commissioner has otherwise provided by Rule 153(a), supra note 2, to the

The claim is rejected under 35 U.S.C. § 112, second paragraph, as failing to claim the subject matter appellant regards as his invention. *In re Conley et al.*, 490 F.2d 972, 180 USPQ 454 (CCPA 1974).

Appellant regards as his invention for purposes of meeting the requirements of 35 U.S.C. § 171 an entire drill tool in view of the title. The title is of great importance in a design application. It serves to identify the article in which the design is embodied by the name generally used by the public.

However, appellant regards the claim to be only for shank portions of the drill tool. Thus, appellant intends that the claim would cover all sorts of undisclosed drill tool appearances, no matter what relation the diameter and length the cutting portion might have to the shank portion, and no matter what the effect on the appearance of the drill tool as a whole would be. Inasmuch as the claim does not conform to appellant's arguments, there is clearly a question as to what is being claimed and the claim is therefore not in compliance with Section 112.

Appellant requested reconsideration by the board, dealing separately with (1) the board's affirmance of the examiner's rejection under § 171 and (2) the board's new rejection under § 112. In the first part, appellant argued that *Blum* supports patentability of his claim, that the paragraph of the MPEP relied on by the PTO [4] is not an accurate reflection of the *holding* in *Blum* (meaning what was *said* in the *Blum* opinion about the use of dotted lines), that unless a clear distinction is maintained between the terms "design" and "article" the guidance provided by *Blum* is obfuscated,[5] and that no subject matter has here been "disclaimed" in the usual meaning of that term in patent law.

Relying on *Blum*, appellant insisted that this court there recognized that an *article* illustrated in a design patent can have parts in which the new design is embodied, and other parts which embody none of the new design, the latter being termed "environment." Stated another way, he argued that *Blum* recognized explicitly that a novel design may reside in only a portion of an article of manufacture. To illustrate the point, appellant produced a copy of U.S. Patent D–89,448 which issued March 14, 1933, to Northup, the appellant in the *Northup* case cited by the examiner, on a parent application of the one involved in that case, which identifies the patent in a footnote. The patent is entitled "Design for an Automobile Body," claims a design "for an automobile body, substantially as shown and described," shows most of an automobile body in which only the windshield portion is shown in solid lines, all the rest being in dotted lines, and contains explanatory matter in the specification, which we set forth in the footnote, showing that what is claimed in the patent is only a design for the windshield portion of the body.[6]

---

extent of permitting only a single claim in specified language in design cases.

4. MPEP Section 1503.02, 2nd paragraph after the rule, reads:

The ornamental design which is being claimed must be shown in solid lines *in* the drawing. Dotted lines for the purpose of indicating unimportant or immaterial features of the *designed article* are not permitted. There are no portions of a claimed design which are immaterial or unimportant. *In re Blum*, 852 O.G. 1045; 153 USPQ 177. [Emphasis ours.]

Appellant's criticism is that to conform to *Blum* the emphasized words should be replaced with the word "design." As explained infra, we agree.

5. Even appellant has had some difficulty, before us as well as before the board, in following his own insight at times as when, for example, he speaks of granting a design patent for *an article* of manufacture, or of claiming a "drill tool." A design patent is, in every case, for a *design*.

6. "The dominant feature of my new design comprises the appearance of the forward corners and parts surrounding the windshield, as shown in the full lines. The parts shown in the dotted lines are illustrative of a conventional standard type of automobile body * * *. The said dominant feature may be employed and embodied without substantial change, in the following conventional types of closed automobile bodies: coupés, four-door sedans, coaches or two-door sedans and victorias."

To further illustrate his point, appellant referred to the examiner's statement at oral hearing that patent protection could be had on a design for a screwdriver *handle*, where the shank and blade is a *separate piece* shown in the drawing in broken lines. Appellant argued it would be illogical to deny the patent where the screwdriver (assumed to have the same appearance) is made all in one piece.

On point (2), the board's new § 112 rejection, appellant somewhat obfuscates his argument by failing to draw a clear line between claiming a *design*, claiming a drill tool, and claiming only a shank portion of a drill tool, just as the board did in its rejection. In attempting to answer the board in its own terms, appellant did say, however, that "he does indeed regard the *article of manufacture* in which the ornamental design is embodied to be an entire drill tool, in view of the title, the drawings, and the claim." (It was the examiner who forced him into this position.) He also said, "What applicant does state clearly is that *the design* resides only in the portion of the claimed article of manufacture [meaning, of course, the article *recited* in the claim, which is directed to or *claims* a *design*, not an article] which is shown in solid lines in the drawings." His ultimate point was that he had fully complied with § 112, to the best of his ability to make clear what he regarded as his invention, while claiming it in conformity with the PTO's view of the law.

The board's second opinion found nothing new to consider on the § 171 rejection. On the § 112 rejection, we have such difficulty in understanding what the board was trying to say that we think it best to quote it in full (it being unpublished):

As to the new rejection § 112, appellant concedes that the article of manufacture in which the ornamental design is embodied is an entire drill tool. Both the title and the claim so indicate. However, the basis of this rejection is that the drawings, by showing the cutting tool portion in broken lines, demonstrate that the cutting portion of the article is not part of the claimed subject matter, viz, the ornamental design of the article of manufacture. Therefore, notwithstanding the title and the claim which both specify a drill tool, appellant seeks to establish an exclusive property right in the appearance of merely the shank portion of the entire article of manufacture.

A claim limited to just the design appearance of the shank portion would not be to the design appearance of an article of manufacture. A claim to the design appearance of a shank portion would be totally independent of the design appearance of the entire drill tool since the cutting portion could have any length, any diameter, and be of any shape. To illustrate a design appearance of an article of manufacture, the design appearance including the length, diameter and shape of the cutting portion must somehow be correlated with the design appearance of the shank portion.

If a patent is to be granted, we think the title and claim should be commensurate with the scope of protection accorded so that interested parties will be able to determine, without the need for an adjudication in the courts, the boundaries of protection involved to evaluate the possibility of infringement and dominance.

## OPINION

### The § 112 Rejection

Picking up where the board left off, we advert to the fact that the examiner gave up his § 112 indefiniteness rejection and in his Answer insisted that the claim on appeal was limited to a design for the shank portion of a drill tool, showing that he had a clear understanding of "the scope of protection [to be] accorded."

The board, likewise, in its main opinion, concluded "that only the shank portion, rather than the entire tool, is being claimed * * *."

Our own consideration of the application in its present form makes it perfectly clear to us what is being claimed and what is not within the scope of the claim. It also

makes clear to us that appellant is claiming precisely what *he regards* as his invention,[7] albeit he has been forced by the PTO into arguing that his claim is directed to a drill tool (which it is not), a complete "article of manufacture" (though he also argues he claims a *design* ), in order to try to convince the PTO that he is complying with its requirements—all of which tends to obfuscate the situation. Since it is nevertheless clear to us, as well as to the examiner and the board, *what is* being claimed, and that it is what the appellant *regards* as his invention, we necessarily hold that there is no basis in § 112, paragraph two, for rejecting the claim. The board's new rejection is therefore reversed.

### The § 171 Rejection

■ Turning to the examiner's final rejection based on non-compliance with § 171, affirmed by the board, the gist of it is that a claim to a design which is embodied in less than all of an article of manufacture—at least in one which is an integral or one-piece article such as a drill, or a screwdriver—is not permitted by the provision of § 171 authorizing a patent for "any new, original and ornamental design for an article of manufacture." We know of no reason for putting such a limited construction on that statute. We do not so construe it. We did not so construe it in *Blum*, which, the board said, "constrained" it to decide as it did. We therefore reverse that rejection.

■ If, as we hold, a design *for* an article of manufacture may be embodied in less than all of an article of manufacture, it is apparent that the principal reason given by the board for its decision involves a non sequitur. It reasoned that the claim had to be rejected *because* "appellant has disclaimed the cutting portion of the claimed DRILL TOOL * * *" and "only the shank portion, rather than the entire tool, is being claimed * * *." That, we hold, is not a valid reason for rejecting a claim. Furthermore, it will be noted, the board

erred in treating the claim as directed to a drill tool and only to the shank portion of a tool—the *article itself* rather than the *design for* the article. That is the same flaw that persists in MPEP 1503.02, which speaks of the "designed article" and prohibits dotted lines therein, because, quoting what we said in *Blum*, "There are *no* portions *of a design* which are 'immaterial' or 'not important'." We did not there speak of a "designed article" but of a design; note the original emphasis. An article may well have portions which are immaterial to the design claimed. *Blum* does not support the present MPEP language.

The only precedent relied on by the examiner was the 1932 board decision in *Ex parte Northup*, which appears to us to have been inconsistent with the contemporaneous act of the PTO in issuing Northup patent No. D–89,448, referred to in the opinion in that case. The board there said Northup could not claim the design for the "forward corner" of an automobile body because it was not "a complete article of manufacture," since it was "never manufactured and sold as a separate article of manufacture." Patent D–89,448, as here, has a claim referring to a complete article, namely, "an automobile body" but when the claim is read, as it must be, in conjunction with the specification and drawing, it is clear that the claim is for the design of the windshield portion only, which is shown in solid lines in the drawing, all the rest of the body being in dotted or broken lines. One board decision is not binding on the construction of a statute; and, of course, we are not saying the issuance of one patent is a precedent of much moment. Both are no more than food for thought. We turn for guidance to a higher authority.

In the Supreme Court case of *Gorham Co. v. White*, 81 U.S. (14 Wall.) 511, 20 L.Ed. 731 (1871), the design patent in suit was for a "new design for the handles of tablespoons and forks." The drawing appears at 81 U.S. 521 and shows a design embodied in

---

7. It was even clearer from the original specification and claim what scope of protection was being sought and what appellant regarded as his invention. The title, the specification and drawing, and the claim were all consistent and "commensurate."

the handle of what appears to be a spoon, but could be a fork, the bowl or tine portion simply being omitted. The patent issued July 16, 1861, to Lewis Dexter, Jr. (see Circuit Court opinion, Fed.Cas. 5627). The law in effect at the time appears to have been § 11 of the act of March 2, 1861, 12 Stat. 248, which provided for patents on designs for, inter alia, "any new and original shape or configuration of any article of manufacture," and thus had the same reference to "article of manufacture" found in the present statute, so far as configuration-of-goods designs are concerned. While *Gorham* involved only the issue of infringement, validity not having been contested (81 U.S. at 512), the Supreme Court sustained the patent and reversed the lower court holding of non-infringement. Clearly, the case involved a design for unitary, one-piece articles of manufacture where in the design was embodied in only part of the article, namely, the handle. The claim there was directed to a design for a *handle*, comparable to appellant's original attempt here to direct his claim to a design for a shank, which the examiner, in his praiseworthy effort to follow the MPEP, would not permit him to do.

Section 171 authorizes patents on ornamental designs *for* articles of manufacture. While the design must be *embodied* in some articles, the statute is not limited to designs for complete articles, or "discrete" articles, and certainly not to articles separately sold, as implied in the *Northup* board opinion. No sound authority has been cited for any limitation on *how* a design is to be embodied in an article of manufacture. Here the design is embodied in the shank portion of a drill and a drill is unquestionably an article of manufacture. It is thus applied design as distinguished from abstract design. Referring to the express words of § 171, supra, we are of the opinion that the word "therefor" in the phrase "may obtain a patent therefor" refers back to "design," not to "article of manufacture." We note also that § 171 refers, not to the design *of* an article, but to a design *for* an article, and is inclusive of ornamental designs of *all* kinds including surface ornamentation as well as

configuration of goods. In *In re Hruby*, 373 F.2d 997, 54 CCPA 1196, 153 USPQ 61 (1967), the apparent visual shape of the streams of a water fountain was held proper design patent subject matter, indicative of a liberal construction of § 171.

The PTO having raised no issue based on the other qualifications found in § 171 ("new, original and ornamental"), we think the rejection of appellant's claim, as the board has interpreted it, must be reversed.

The board "felt constrained" to make its holding by our 1967 *Blum* opinion but did not say why. Nor do we see why. The issue in *Blum* was obviousness but a preliminary question was identification of a design; as we said, there was internal PTO disagreement as to what design was there claimed because of lack of clarity in the description. The problem revolved around the use of dotted lines and their explanation or lack of it. We found the provisions of the MPEP as then written conducive to the confusion. We criticized the use of dotted lines to show any part *of the design* sought to be patented and the use of "dominant feature" statements in conjunction with a dotted-line showing of part *of the design*, as distinguished from its *environment*. As noted by the board here, the MPEP has now been changed. It is greatly improved but still lacks clarity. (See note 4, supra.) We have searched the *Blum* opinion in vain, however, for any statement justifying the board's statement that an ornamental design cannot be incorporated or embodied in something less than an entire article of manufacture. What we have found, however, is a clear statement, which we feel constrained to emphasize again, which supports appellant's position in this case (374 F.2d at 907, 54 CCPA at 1234, 153 USPQ at 180):

> There is a distinction to be observed between parts of the total *article illustrated*, in which a new design is embodied, and parts of that article which embody none of the *design*. [Original emphasis.]

Nothing in our opinion in *Blum*, or the decision therein, compels, or even supports, the § 171 rejection on appeal.

We trust the foregoing will clarify the import of our 1967 opinion in *Blum,* especially the distinction there made between a design *for* an article and the article *in which* the design is embodied as a configuration or *to which* it is *applied.* What *Blum* involved, however, was primarily the problem of identifying what, exactly, was being claimed—a problem of indefiniteness of claim due to an ambiguous use of dotted or broken lines. That problem was exacerbated by the former wording of the MPEP which has now been improved and which we hope will be still further perfected as we have suggested above.

Our review of the complex prosecution of the present application leaves us with the feeling that the character of the design here disclosed may have unconsciously influenced the decisions made by reason of certain matters on which the PTO has remained silent. We have in mind questions on which we can express no opinion because we are a court of *review* and do not pass on issues not raised, such as whether the shank is "ornamental" or dictated by function or is substantially concealed or obscured while the shank is in normal use. *In re Stevens,* 173 F.2d 1015, 1016, 36 CCPA 1017, 1019, 81 USPQ 362, 362-63 (1949). We presume that the PTO in doing its duty considered novelty and nonobviousness because of the references cited by the examiner even though he made no attempt to apply them because of his other rejection.

The dissenting opinion relies heavily on a presumed "uniform, consistent, long-standing view of the PTO," citing in support *Ex parte Northup,* supra, a 1932 board decision which was even contemporaneously inconsistent with issuance of a patent to Northup the very next year on a windshield *portion* of an auto body. The *Northup* decision is a "one swallow does not make a summer"

situation. A casual inspection of currently issued design patents in the 1979 Official Gazette confirms there has been no such "consistent construction" and that it does not exist even today, designs for parts of articles having been regularly patented where the designs have been so described.[8] The cited PTO rules, ancient and modern, are not seen to be inconsistent with this opinion.

The decision of the board is *reversed.*

*REVERSED.*

BALDWIN, Judge, dissenting, with whom WATSON, Judge, joins.

I disagree that the question before the court is in any way related to the presence or absence of the dotted lines found in the drawings of appellant's claims. I suggest that the problem is much more closely tied to the very foundation of design patent law. The majority decision makes wholesale changes to a century of practice which has required disclosure of the *article* to which a design is applied. The decision in this case permits this appellant, and applicants who follow him, to effectively claim abstract designs without disclosing a sufficient amount of the articles in which they are embodied to allow an observer to evaluate the overall visual impression of that article.[1]

My dissent rests on the construction to be given "design for an article of manufacture" as provided in § 171.

I will agree with the majority that a design may well be embodied in less than all of an article of manufacture. However, there is ample judicial and administrative precedent to support a construction of § 171 providing patent protection only for the

---

8. For example, Des. No. 251,577, Chair or similar article 4/17/79 (pedestal support in dotted lines); Des. No. 252,282, Cabinet which houses components employed in surgery, 7/3/79 (3 instrument dials in dotted lines); Des. No. 252,-352, Pair of automobile headlamp lenses, 7/10/79 (whole car body and wheels in dotted lines); Des. No. 252,457, Steering wheel rim,

7/24/79 (integral supporting bracket in dotted lines).

1. As noted, infra, this appellant avers that the overall appearance of the unitary drill bit is of no importance to him; the appearance of the shank portion being his "design."

overall visual appearance of the article in which the design is embodied.[2]

For instance, *Gorham Co. v. White*, 81 U.S. (14 Wall.) 511, 20 L.Ed. 731 (1871) involved the issue of infringement of a design patent. *Gorham* stressed that:

[T]he thing invented or produced, for which a patent is given, is that which gives a peculiar or distinctive appearance to the manufacture, or article to which it may be applied, or to which it gives form. The law manifestly contemplates that giving certain new and original appearances to a manufactured article may enhance its salable value, may enlarge the demand for it, and may be a meritorious service to the public. * * * It is the appearance itself which attracts attention and calls out favor or dislike. It is the appearance itself, therefore, no matter by what agency caused, that constitutes mainly, if not entirely, the contribution to the public which the law deems worthy of recompense. * * * As the acts of Congress embrace only designs applied, or to be applied, they must refer to finished products of invention rather than to the process of finishing them, or to the agencies by which they are developed. [Supra at 525.]

Although the patent in *Gorham* was for a design for handles of spoons and forks, the disclosure therein was clearly sufficient to allow the Court to evaluate the overall visual impression of those utensils. *Gorham* cannot be read to extend the protection of § 171 to designs which are either in the abstract and are only to be applied to "articles of manufacture" or to disclosures which do not sufficiently describe the pertinent "article."

A later Supreme Court case, relying on *Gorham*, stated the test for infringement in this manner:

"[T]he true test of identity of design is sameness of appearance,—in other words, sameness of effect upon the eye; that it

is not necessary that the appearance should be the same to the eye of an expert, and that the test is the eye of an ordinary observer, the eyes of men generally, of observers of ordinary acuteness, bringing to the *examination of the article upon which the design has been placed* that degree of observation which men of ordinary intelligence give." *Ripley v. [Elson] Glass Co.*, 49 F. 927. [Emphasis ours. *Smith v. Whitman Saddle Co.*, 148 U.S. 674, 679, 13 S.Ct. 768, 770, 37 L.Ed. 606 (1893).]

Thus, in this instance, it is the *article* upon which the design has been placed that is observed and its appearance determined.

The frequently cited passage from *Pelouze Scale & Mfg. Co. v. American Cutlery Co. et al.*, 102 F. 916, 918 (7th Cir. 1900) provides:

Design, in the view of the patent law, is that characteristic of a physical substance which, by means of lines, images, configuration, and the like, taken as a whole, makes an impression, through the eye, upon the mind of the observer. The essence of a design resides, not in the elements individually, nor in their method of arrangement, but in the tout ensemble—in that indefinable whole that awakens some sensation in the observer's mind. Impressions thus imparted may be complex or simple; in one a mingled impression of gracefulness and strength, in another the impression of strength alone. But whatever the impression, there is attached in the mind of the observer, to the object observed, a sense of uniqueness and character.

This court, in determining the nonobviousness of new designs under 35 U.S.C. § 103, has stated that "[t]he test is inherently a visual test, for the design is nothing more than appearance, and the appearance is that of the article as a whole." *In re Laverne*, 356 F.2d 1003, 1006, 53 CCPA 1158, 1163, 148 USPQ 674, 677 (1966). The

**2.** A similar situation is found in the area of utility patents. The law does not provide protection for "ideas" or "inventive concepts" but rather requires that they be fleshed out in the form of a "process, machine, manufacture, or composition of matter." An applicant does not claim a naked temperature; instead, he claims a process using that particular temperature.

court in *Laverne* considered the overall visual impression of the following chair in resolving the § 103 question:

The dotted lines were sufficient in that instance for a comparison of that impression with the prior art.

I think it quite clear, as illustrated by the selection of cases above, that the overall appearance of the *article* is considered in questioning infringement or validity of issued design patents as well as the nonobviousness of claims in design applications. The quantum of disclosure must include that article.

With such judicial support, it is not surprising that the administrative practice of the PTO has amply reflected a construction that § 171 refers to the overall visual impression of the article as a whole.

It is required in 37 C.F.R. 1.153 that "[t]he title of the design must designate the particular article. * * * The claim shall be in formal terms to the ornamental design for the article (specifying name) as shown, or as shown and described." In 37 C.F.R. 1.152 it states that "[t]he design must be represented by a drawing made in conformity with the rules laid down for drawings of mechanical inventions and must contain a sufficient number of views to constitute a complete disclosure of the appearance of the article."

These cited portions are found in the 1949 codification of Title 37 of the Federal Regulations.[3] Prior to 1949, and at least as far back as 1904 PTO Rules of Practice, rules 81 and 84 provided as follows:

81. The proceedings in applications for patents for designs are substantially the same as in applications for other pat-

ents. Since a design patent gives to the patentee the exclusive right to make, use, and vend articles having the appearance of that disclosed, and since the appearance can be disclosed only by a picture of the article, the claim should be in the broadest form for the article as shown.

84. The design must be represented by a drawing made to conform to the rules laid down for drawings of mechanical inventions.

In 37 C.F.R. 1.152, old rule 84 was incorporated, with the significant addition that the drawing constitute a complete disclosure of the appearance of the article.

In 37 C.F.R. 1.153, old rule 81 was incorporated, specifying that the title of the design designate the particular article, and more particularly showing that the claim is to the design for the article as shown and described. The Rules of Practice must be granted the force and effect of law unless they are inconsistent with statute. *In re Rubinfield*, 270 F.2d 391, 47 CCPA 701, 123 USPQ 210 (1959).

The solicitor argues that at least since *Ex parte Northup*, 24 USPQ 63 (Bd.App.1932), it has been the position of the PTO that a portion of an article of manufacture is not susceptible to protection under the design statutes. It was stated in *Northup* that in considering a design, the appearance of the entire article must be taken into consideration.

The majority dismisses *Northup* as "[o]ne board decision * * * not binding on the construction of a statute." I disagree. Faced with the Rules of Practice dating back to 1904 together with the earlier judicial precedents cited above, I am inclined to agree with the solicitor that the *Northup* view represents a uniform, consistent, longstanding view of the PTO and as such must be given consideration as an indicator of the meaning of the law.

Prior to *Application of Blum*, 374 F.2d 904, 54 CCPA 1231, 153 USPQ 177 (1967),

---

3. The 1952 Act did no more than codify the law as it existed prior to that time. The commentary by P. J. Federico on the 1952 Act goes so far as to say that the chapter of the act relating to design patents made no "substantive changes."

PTO practice permitted the use of dotted lines in the drawings for portions of the article, provided there was a statement in the specification that the *dominant features* of the design were shown in full lines. In *Blum*, the court neither proscribed nor supported the use of dotted lines in the drawing. It only said that "in each case it must be made entirely clear what they [the dotted lines] do mean." Supra, 374 F.2d at 907, 54 CCPA at 1234, 153 USPQ at 179. The court suggested that under the circumstances of *Blum*, the "dominant feature" statement was not in the interest of clarity.

The dicta of *Blum* made the distinction between a design *for* an article and an article in which a design is embodied. I hesitate to regard that dicta as a sufficient basis for extending the scope of § 171 to provide protection for a design for a portion of an article when the drawing is incapable of reflecting the overall visual effect of the entire article. The judicial decisions with respect to infringement, this court's decision with regard to determination of obviousness, and the long-standing rules of practice support a construction of § 171 that "design for an article of manufacture" refers to the overall visual appearance of the article in which the design has been embodied.

Appellant admits in his brief that the portions of the drawing shown in broken lines are not to be considered as even exemplary of the appearance of the article in which his design is embodied. Since appellant fails to disclose sufficient detail of the drill bit to allow one to appreciate the overall appearance of that article, I consider the disclosure not to be in conformance with § 171.

I would affirm the decision of the board.