**In re Philip Robert SALMON and Hugh Campbell Hamilton.**

**Appeal No. 82–603.**

United States Court of Appeals, Federal Circuit.

April 25, 1983.

Fred Wiviott, Milwaukee, Wis., argued for appellant.

Harris A. Pitlick, Associate Sol., Arlington, Va., argued for the United States Patent and Trademark Office. With him on the brief were Joseph F. Nakamura, Sol., and Fred E. McKelvey, Associate Sol., Washington, D.C.

Before FRIEDMAN, DAVIS and NICHOLS, Circuit Judges.

FRIEDMAN, Circuit Judge.

This appeal is from a decision of the Patent and Trademark Office Board of Appeals ("Board") affirming the rejection of the appellants' application for reissue of a design patent. The correctness of that decision turns upon the validity of the Board's conclusion that the design shown in a second application was a different design from that shown in the first application. We affirm.

I.

On April 17, 1972, the appellants filed their first application (the "parent application"). The application was for "an ornamental design for a Stool as shown" in drawings accompanying the application. The drawings showed a stool consisting of a single bent tubular support and a square seat with rounded corners. There were drawings of the stool from three different

perspectives, two of which showed the shape of the seat, and each of which showed a seat as a part of the stool.

On April 23, 1973, the appellants filed a second application, claiming an "ornamental design for a Stool substantially as shown." The tubular support portion of the stool shown in the accompanying drawings was virtually identical to that shown in the parent application, but the seat was round instead of square. The parent application was abandoned on January 9, 1974. A design patent for the stool with a round seat, Des. 234,101 (the '101 patent), was issued on January 21, 1975.

On May 30, 1978, the appellants filed the application for reissue that is the subject of this appeal. The only change the reissue sought to make in the '101 patent was to add this sentence: "This application is a continuation-in-part of our application Serial No. 245,009, filed April 17, 1972, now abandoned."

The reissue application apparently was filed as a result of the appellants' discovery, after the '101 patent had issued, that more than a year before they applied for that patent an advertisement had been published in *The New Yorker* magazine for a stool that appeared identical to the stool claimed in the parent application, i.e., a stool with the same tubular support and square seat. The appellants apparently concluded that the substitution of a round for a square seat would have been obvious (as the Board held in the present case), so that unless they could obtain the benefit of the earlier filing date of the parent application, the '101 patent would be invalid under 35 U.S.C. § 103 (1976). The reissue application was designed to accomplish that objective.

The examiner allowed the reference to the parent application, but denied the reissue because the appellants were not entitled to the earlier filing date of the parent application. The Board affirmed. It held that the appellants had not satisfied the requirement in 35 U.S.C. § 120 for obtaining the benefit of the earlier filing date because "the invention [the design]" disclosed in the parent application was not the same design disclosed in the '101 application. The Board affirmed the denial of the reissue application because, as of the effective filing date of that application, the design disclosed in the reissue application would have been obvious in view of *The New Yorker* advertisement and an earlier design patent (Dieter, Des. 137,904, May 16, 1944) for a chair with a tubular support and a round seat.

The Board ruled that the drawings in the parent application did not indicate that the square seat was not a part of the design for which a patent was sought; that the parent application disclosed only a stool with a square seat; and that the description of a stool with a square seat did not inherently disclose a round seat. The Board held that although the use of a round seat would have been obvious to one of ordinary skill in the stool-designing art, that was insufficient to show that the square-seated stool disclosed in the parent application also was a disclosure of the round-seated stool for which the patent had issued.

## II.

The appellants do not challenge the Board's determination that the round-seated stool would have been obvious in light of *The New Yorker* advertisement for the square-seated stool and the prior Dieter reference. The sole question before us is whether the appellants are entitled to the benefit of the earlier filing date of the parent application, so that their application would be treated as antedating the references upon which the Board relied in denying the reissue application as obvious.

Sections 112 and 120 of the patent laws (35 U.S.C. §§ 112, 120 (1976)) are the governing statutory standards. Section 120 provides:

> An application for patent for an invention disclosed in the manner provided by the first paragraph of section 112 of this title in an application previously filed in the United States ... by the same inventor shall have the same effect, as to such invention, as though filed on the date of the prior application, if filed before the patenting or abandonment of or termina-

tion of proceedings on the first application . . . .

The referenced paragraph of section 112 states:

The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

■ Insofar as here pertinent, these two provisions together require that for section 120 to apply, the first application must disclose "the invention" claimed in the second application. *See, e.g., In re Smith*, 481 F.2d 910, 914–15, 178 USPQ 620, 623–24 (Cust. & Pat.App.1973); *In re Smith*, 458 F.2d 1389, 1394–96, 173 USPQ 679, 682–84 (Cust. & Pat.App.1972). With respect to the design patent involved in this case, those provisions require that the stool design claimed in the second application must be the same design disclosed in the parent application.

■ The Board held, and we think correctly, that the design for a stool with a round seat was not disclosed in the parent application:

[T]he disclosure in the parent application does not suggest a seat member of any other configuration, and thus does not describe a stool where the seat member has a round configuration. . . . [T]he alternative of a round seat is not found in the disclosure in the parent application.

The parent application disclosed only a stool with a square seat, not one with a round seat. The parent application claimed "an original design for a Stool as shown." The stool as shown in the drawings was depicted in three-dimensional sketches that showed a square seat. Similarly, the specification in the application described figure 1 in the drawings as "a general perspective view of the front of a stool embodying our new design."

Nothing in the text of the application or the attached drawings even intimated that the square shape of the seat was not an integral element of "our new design" for a stool. Nothing in the application indicated that the design for which a patent was sought was anything less than the stool "as shown." Neither the text of the application nor the drawings even suggested that the design consisted of only the tubular portion of the stool and not the seat.

The present case, therefore, is unlike *In re Zahn*, 617 F.2d 261, 204 USPQ 988 (Cust. & Pat.App.1980), upon which the appellants rely. Zahn applied for a patent for an ornamental design for a drill tool. The written description in the application made clear that patent protection was sought only for the design for the shank of a drill bit and not for the twist drill attached to the shank. Although both were shown in the drawings, only the shank was drawn in a solid line. The twist drill was drawn in a dotted line in accordance with the practice at that time of thereby indicating that a patent was not being sought for the design of that portion of the article thus depicted.

The examiner and the Board rejected the application, but the court reversed based on its reading of 35 U.S.C. § 171, which authorizes a patent for "any new, original and ornamental design for an article of manufacture." The court held that section 171, noncompliance with which largely formed the basis for the action of both the examiner and the Board, did not warrant rejection. The court rejected the Patent and Trademark Office's view that a design patent could not be issued for "a design which is embodied in less than all of an article of manufacture"—in that case, the shank of the drill bit. 617 F.2d at 267, 204 USPQ at 994. The court stated:

Section 171 authorizes patents on ornamental designs *for* articles of manufacture. While the design must be *embodied* in some articles, the statute is not limited to designs for complete articles, or "discrete" articles . . . . No sound authority has been cited for any limitation on *how* a design is to be embodied in an article of

manufacture. Here the design is embodied in the shank portion of a drill and a drill is unquestionably an article of manufacture. It is thus applied design as distinguished from abstract design.

*Id.* at 268, 204 USPQ at 995 (emphasis in original).

The court also repeated the following statement from its earlier decision in *In re Blum,* 374 F.2d 904, 907, 153 USPQ 177, 180, 54 CCPA 1231 (CCPA 1967):

There is a distinction to be observed between parts of the total article illustrated, in which a new design is embodied, and parts of that article which embody none of the *design.*

*Id.* (emphasis in original).

In *Zahn* the applicant claimed only the design for the shank of the drill bit, not the entire drill. The question was whether a patent could issue for a design for only part of an article; the court held that it could. In the present case, in contrast, there is no indication that the appellants claimed the design for only the tubular support of the stool and not the entire stool "as shown" in the drawings, including its square seat.

The appellants contend, however, that the difference between the design disclosed in the parent and subsequent applications was an "immaterial variation." Pointing to the Board's determination that substitution of the round seat for the square seat disclosed in the parent application would have been obvious to one of ordinary skill in the art, they assert that the two stools "are obvious variations of the same design." As their reply brief states: "The essence of the invention of both applications can be considered as the ornamental design i.e., the novel base as applied to the article of manufacture i.e., the stool itself. Accordingly, the same 'invention' is disclosed in both applications thus satisfying the requirements of § 112."

The determination whether particular differences in designs are sufficiently significant to produce different designs is largely a matter of aesthetics. We cannot say that the Board erred in concluding that the design for a stool with a square seat disclosed in the parent application was not the same design as that for the stool with the round seat disclosed in the subsequent application. "A design is a unitary thing and all of its portions are material in that they contribute to the appearance which constitutes the design." *In re Blum,* 374 F.2d at 907.

The appellants also argue that because the Board held that it would have been obvious to one of ordinary skill in the art to substitute a round seat on the square-seated stool disclosed in the parent application, it follows that the two applications disclosed the same design. That is a *non sequitur.* The obviousness holding means only that it would have been obvious from the design disclosed in the parent application to make the new design disclosed in the second application, not that the two designs were the same. *See In re Barker,* 559 F.2d 588, 593, 194 USPQ 470, 474 (Cust. & Pat.App.1977).

The decision of the Board of Appeals is affirmed.

AFFIRMED.

NICHOLS, Circuit Judge, dissenting.

With all respect, I cannot go along with this decision. Appellant has fallen into a trap for the unwary. The appellant made a trifling misstep which has, for him, the momentous consequence that his novel design of a bar stool apparently loses the patent protection that he sought, and which otherwise he would have. The misstep was in drawing the seat of his stool in solid, instead of dotted lines. It seems to me that a little judicial creativity might endow him with constructive dotted lines, for no one could look at the drawings and suppose the inventor ever intended to patent the squareness or roundness of the seat. I am aware that according to decision, the law of design patents is that they are practically without scope except for counterfeiting situations, and they are limited to what the drawings show. The cases cited to us are not all-fours precedents, and, in any case, looking at the drawings with an understanding eye is precisely what I would urge.

There is no reason, except judicial fiat, why a design, even if largely a matter of aesthetics, should not allow immaterial variations on that design, just as a musical theme is still the same theme even if transposed to a different key. Designs are also partly matters of optics. The difference between a round and a square seated stool is invisible if the stool is occupied, or from an eye level approximating the stool height, even if it is unoccupied. The court is treating design as a mysterious black art it cannot understand, and will not learn, so cosmic significance may lurk in variations that would be irrelevant and immaterial to a tutored eye. If design is thus unknowable, design patents should not be litigated in judicial tribunals.