**CONNECTICUT PAPER PRODUCTS, Inc., v. NEW YORK PAPER CO.**

**No. 4902.**

Circuit Court of Appeals, Fourth Circuit.

April 13, 1942.

**424**

Karl W. Flocks, of Washington, D. C., for appellant and cross-appellee.

C. Paul Parker, of Chicago, Ill. (William Mercer Alexander, of Chicago, Ill., on the brief), for appellee and cross-appellant.

Before SOPER and DOBIE, Circuit Judges, and WARING, District Judge.

**DOBIE, Circuit Judge.**

This was an action brought by Connecticut Paper Products, Incorporated (hereinafter called plaintiff), against New York Paper Company (hereinafter called defendant), upon three patents, all involving related subject matter, in which it was claimed that defendant had infringed each of the three patents in suit. The first patent was for a paper drinking cup (Ericson patent No. 1940406, issued December 19, 1933, upon application of June 30, 1932); the second patent was for a metal device for dispensing such cups (Emerson patent No. 2206838, issued July 2, 1940, upon application of April 15, 1940); the third patent was for a design for a paper cup dispenser (design patent to the same Emerson, No. 118578, issued January 16, 1940, upon application of November 4, 1939).

Judge Coleman, in the District Court, 39 F.Supp. 127, 131, held that the first patent (paper cup) was invalid under the prior art; that the second patent (metal dispenser) was valid and infringed by defendant; that the third patent (design patent) was invalid on the score that this patent involved only functional features without any substantial ornamental features. From the final decree entered in the lower court, plaintiff duly appealed to this Court and defendant filed a cross-appeal. We shall consider the three patents separately, in the order above indicated.

### The Ericson Patent for a Paper Drinking Cup.

Judge Coleman held that this patent is invalid under the prior art. This holding, we think, is eminently correct. Said Judge Coleman, in his opinion: "We have no hesitancy in finding that the Ericson patent is invalid because anticipated by Dickerson". Judge Coleman also discussed the obvious similarities between the Ericson cup and the Hogan cup. Any lingering doubt here, we feel, will be dispelled when the Ericson cup is compared with other paper cups ante-dating the Ericson patent.

As Judge Coleman well said in his opinion: "It is too well established to require citation of authorities that the object of the patent laws is to reward those who make some substantial discovery or invention which adds to the sum total of our knowledge and makes a step in the development of a given art. It was never the object of the patent laws to grant a monopoly for every trivial device, or for every shade or shadow of an idea which would naturally occur to any one skilled in the particular art. Such an indiscriminate creation of exclusive privileges would tend to discourage rather than stimulate invention."

See, also, Atlantic Works v. Brady, 107 U.S. 192, 2 S.Ct. 225, 27 L.Ed. 438; Weidhaas v. Loew's, Inc., 2 Cir., 125 F.2d 544.

And, as this Court (citing authorities therefor) said in Scott & Williams, Inc., v. Whisnant, 4 Cir., 126 F.2d 19, 23, decided February 17, 1942: "Again, the record makes clear that the * * * patent is in no sense basic or revolutionary. At best, it is no more than an ingenious improvement in a crowded field. * * * At the very least, we are justified in giving to the claims of the patent in suit and to the wording of the specifications, a narrow rather than a liberal interpretation."

There are three claims in the Ericson patent, all substantially similar. We quote the most elaborate of these, Claim 3: "A paper drinking cup having a pair of opposed walls, one of said walls being formed by a pair of overlapping wings, each of which is provided with a flap at its lower edge, the other wall having an extension secured to its lower edge, said flaps and extension being of the same width as that of their respective walls, said overlapping wings providing a thickened triangular portion the base portion of which is substantially the same width as that of said walls, said flaps and extension being folded together in superimposed relation and secured to the base portion of said triangular portion to provide a closed bottom."

Also we quote the first twenty-three lines of the Ericson patent:

"This invention relates to paper drinking cups, and more specifically to the flat or envelope type of cup which is adapted to be stored in stacks in dispensing machines and to be withdrawn therefrom one by one in a flat condition.

"It is an object of the present invention to provide an improved cup of this character, one wall of which is provided with a substantially thickened triangular portion, the base of which is disposed adjacent the closed bottom of the cup and which gradually decreases in width towards the mouth of the cup. By means of such a structure, my improved cup may be readily opened by merely pressing the opposite side edges thereof.

"Another object of the present invention is to provide an improved cup of this character, the bottom portion of which will remain substantially flat while stored in the dispensing machine so that the cup may be easily taken therefrom.

"A further object of the present invention is to provide an improved cup of this character which is relatively simple in construction and hence may be cheaply and easily manufactured."

We append also the drawing which accompanied the Ericson patent, together with lines 35-42 of the patent which seek to explain the drawing:

Dec. 19, 1933.  J. E. ERICSON  1,940,406
PAPER DRINKING CUP
Filed June 30, 1932

Fig. 1  Fig. 2  Fig. 3  Fig. 4  Fig. 5

Joseph E Ericson

35  Figure 1 is a plan view of the blank from which my improved cup is formed;
Fig. 2 is a perspective view of my completed cup;
40  Fig. 3 is a section on the line 3—3 of Fig. 2;
Fig. 4 is a fragmentary detail view of the bottom portion of my cup partly folded and
Fig. 5 is a sectional view on line 5—5 of Fig. 2

Also, we quote from Judge Coleman's opinion, since we think they are important, some statements as to the obvious discrepancies between the description of the Ericson cup in the patent and the Ericson cup model actually introduced in evidence: "Ericson's patent drawings and specifications describe a triangular overlap and specify that the base of the triangle is the full width of the bottom of the cup; whereas the Ericson cup model actually introduced in evidence does not have the edge of the overlapped side coming down and meeting the corresponding edge of the bottom overlap. Furthermore, the Ericson model has a folded down

portion on one of the top edges, giving a double reinforced part that is not shown in the patent. Also, what is more important, the model is molded in an open position, and dispensed from nested stacked formation as is the Dickerson cup; whereas the Ericson patent stresses the adaptability of the cups to having a plurality of them, 'stored in a dispensing machine, one upon another, with the bottom of the lowermost cup of the stack exposed so that it may be grasped by the finger of the user and withdrawn from the dispensing machine in flattened condition'."

Probably the basic claim of the Dickerson patent is Claim 3, which reads: "As a new article of manufacture, a paper drinking cup having its body portion in self-extended substantially rounded form, said body from its open mouth tapering in wedge-like form to a watertight bottom closure made by a straight edge transverse fold-up of the cup material secured to the body wall, the line of fold of said fold-up being of sufficient length to provide a base for resting the cup against a finger of the user, when held to filling position in his hand."

Also, we append a drawing of the Dickerson cup:

R. P. DICKERSON  Re. 17,553
Reissued Jan. 7, 1930
Original No. 1,687,716, dated October 16, 1928,

Below are appended drawings of six other patents for paper drinking cups, all granted before the Ericson patent:

## PRIOR CUP PATENTS

W E SWIFT  1,915,006
Patented June 20, 1933
Application filed October 19, 1929.

G. F. HOGAN.  1,021,099.
Patented Mar. 26, 1912.

J. E. SHERMAN.  1,222,565.
Patented Apr. 10, 1917.

H. B. COOLEY.  Re. 14,650.
Reissued May 20, 1919.
Original No. 1,148,143, dated July 27, 1915.

M. B. BAIRD AND G. A. WALLS.  1,378,310
Patented May 17, 1921.

W. A. RINGLER  1,682,350
Patented Aug. 28, 1928.

In the light of what has already been said, the drawings incorporated in this opinion, and the observations in Judge Coleman's opinion, we think it is apparent that the Ericson patent displays no essential novelty that amounts to patentable invention. Plaintiff, we think, has greatly exaggerated both the novelty and the importance, in the Ericson cup, of the triangular overlap tapering from the bottom to the top of the cup. We hold, accordingly, that the Ericson patent in suit is invalid under the prior art.

### The Emerson Mechanical Dispenser Patent.

■■■■ This patent was held by Judge Coleman to be valid and infringed by the device of defendant. We believe that this patent, too, is invalid under the prior art for lack of patentable novelty, since the device in question discloses not a new and patentable *combination* but rather a mere *aggregation* of elements, which were old and well known. This distinction between a *new combination,* which is patentable, and an *aggregation of old elements,* which is not, was well drawn by Justice Strong, nearly seventy years ago, in Hailes v. Van Wormer, 20 Wall. 353, 368, 87 U.S. 353, 368, 22 L.Ed. 241: "It must be conceded that a new combination, if it produces new and useful results, is patentable, though all the constituents of the combination were well known and in common use before the combination was made. But the results must be a product of the combination, and not a mere aggregate of several results each the complete product of one of the combined elements. Combined results are not necessarily a novel result, nor are they an old result obtained in a new and improved manner. Merely bringing old devices into juxtaposition, and there allowing each to work out its own effect without the production of something novel, is not invention. No one by bringing together several old devices without producing a new and useful result the joint product of the elements of the combination and something more than an aggregate of old results, can acquire a right to prevent others from using the same devices, either singly or in other combinations, or, even if a new and useful result is obtained, can prevent others from using some of the devices, omitting others, in combination."

See, also, Reckendorfer v. Faber, 92 U.S. 347, 357, 23 L.Ed. 719; Walker on Patents, Dellers Edition, Vol. 1, page 218, Section 42. And see, also, decided by this Court, Victor Cooler Door, Inc., et al. v. Jamison Cold Storage Co., 4 Cir., 44 F.2d 288, 292; Doughnut Machine Corp. v. Joe-Lowe Corp. et al., 4 Cir., 67 F.2d 135, 137.

The line between the patentable *combination* and the non-patentable *aggregation* is, in actual practice, sometimes difficult to draw with accuracy and precision. And we are not unmindful of the remarks of Mr. Justice Frankfurter in his dissenting opinion in the very recent case of Pearce v. Commissioner of Internal Revenue, 62 S.Ct. 754, 761, 86 L.Ed. ——, decided by the Supreme Court of the United States March 9, 1942: "In law as in life lines have to be drawn. But the fact that a line has to be drawn somewhere does not justify its being drawn anywhere. The line must follow some direction of policy, whether rooted in logic or experience. Lines should not be drawn simply for the sake of drawing lines."

Returning now to the terms of this patent, we find that Claim 5 of the Emerson dispenser patent reads: "In a paper cup dispenser, a rear element, a front element, and a lid, said rear element comprising an elongated base and a pair of extending flanges therefrom, said front element being generally U-shaped in transverse section with the legs of the U being bulged or bellied substantially throughout their length, said rear element being hinged to the legs of said front element at their respective bottoms, said lid being hinged to said rear element and being dish-shaped with a circumferential depending flange corresponding to the shape of the horizontal section of the front element and rear element when in closed position, and cam means located within the front element whereby the bottom cup of a stack may be released from the remainder of the stack, said dispenser being open at its bottom for dispensing purposes."

The first twenty lines of the patent thus set out its objects and nature:

"This invention related to paper cup dispensing and more particularly to the dispensing of stacked paper cups one at a time as required.

"Prior to the instant invention paper cups have been dispensed from stack holders but oftentimes the user obtained two cups when only one was required and frequently the user had difficulty in detaching a single cup from the remainder of the stack. Other prior cup dispenser constructions are expensive and difficult to manufacture and require much attention and servicing in endeavor to keep the dispenser in operation.

"It is an object of the instant invention to provide a novel paper cup dispenser which is simple to fabricate, inexpensive to manufacture, and which effects the dispensing of one cup at a time regularly without jamming the stacked cups.

"It is a further object of the instant invention to teach a novel method of dispensing paper cups one at a time from a stack."

Subjoined is Sheet 1 of the drawing accompanying the patent:

July 2, 1940,                    W. J. EMERSON                    2,206,838

DISPENSING

Filed April 15, 1940          2 Sheets—Sheet 1

Fig.1.

Fig.2.

Fig.3.

Inventor

William J. Emerson,

By   KARL W. FLOCKS

Attorney

A very strong bit of evidence against the plaintiff's claim of patentability here, we think, is found in the square green dispenser made and sold by plaintiff before the granting of the patent in suit. No patent was ever issued on the square green dispenser, and this dispenser has been in use and dedicated to the public for a sufficient length of time to render it non-patentable. Diagrams of cross-sections of the two dispensers are helpful here. In these diagrams, the dotted lines indicate the cup within the dispenser:

Fig. A
**PLAINTIFF'S**
*Prior Square Dispenser*

Fig. B
**PLAINTIFF'S**
*Dispenser in Suit*

In our opinion, the variations between the two dispensers are of little importance and even less novelty. Thus, in the old dispenser, the cups are held and guided downward by the diagonally opposite corners of the square case; while, in the new dispenser, this function is performed by the guide bellies or bulges. That Emerson considered these guide bellies or bulges to be of primary importance is apparent from a casual reading of the patent; for they are set out and stressed in every claim in issue. We are not so impressed. Nor are these bellies or bulges altogether new in the art, as will be seen by an inspection of the Taylor patent (No. 1594134), the Rese patent (No. 1065395) and the Ohlsen patent (No. 1685292)—all in this same field.

Further, in the old dispenser, the cups passed at the bottom through a single metal piece with a central opening extending practically from one corner of the dispenser to the opposite diagonal corner; while the new dispenser contains, set on the side at the bottom, cam means in the nature of two metal plates, and set at a V-shaped angle sloping downwards and inwardly. The reversal, front to rear, of the casings of the two dispensers, and the pinched-in bottom of the new dispenser add little of practical consequence to the picture.

Our conclusion here is reinforced by an inspection of the patents of other dispensers in the prior art. Essentially these follow the same general pattern as the patent in suit. A comparison of these prior dispensers and the Emerson patent convinces us that the Emerson device is in reality a mere non-patentable aggregation of well-known elements and is in essence far from a new patentable combination.

The Emerson Design Patent.

We cordially agree with Judge Coleman that the Emerson design patent is invalid and we deem it unnecessary to add much to what he has said on this subject in his opinion.

In Walker on Patents, Dellers Edition, Vol. 1, Sec. 138, page 434, we find: "Where the configuration of a design is made imperative by the elements which it combines and by the utilitarian purposes of the device, so that the design itself is nothing more than a necessary response to the purpose of the article designed, no patentable design results."

This is amply supported by a long line of cases. See, especially, Standard Computing Scale Co. v. Detroit Automatic Scale Co., 6 Cir., 265 F. 281; Majestic Electric Development Co. v. Westinghouse, etc., Co., 9 Cir., 276 F. 676; Applied Arts Corporation v. Grand Rapids Metalcraft Corporation, 6 Cir., 67 F.2d 428, 430.

There is, too, a second and even stronger reason for holding the design patent invalid on the ground it lacked the requisite inventive characteristics. Walker on Patents, Lotsch Edition, Sections 41 and 45. It was early established that for a design to be patentable, there must be both originality and the exercise of the inventive faculty. Western E. M. Co. v. Odell, D.C., 18 F. 321. And the test of invention for a design patent is the same as that applied to mechanical patents, namely, was the design beyond the powers of the ordinary designer. F. I. A. T. v. A. Elliott Ranney Co., 2 Cir., 249 F. 973; Whiting Mfg. Co. v. Alvin Silver Co., 2 Cir., 283 F. 75; Metallic Industries, Inc., v. Brauning, 8 Cir., 279 F. 856; Strause Gas Iron Co. v. William M. Crane Co., 2 Cir., 235 F. 126. As was stated in Sodemann Heat & Power Co. v. Kauffman, 8 Cir., 275 F. 593, 597: "A design, to be patented, * * * must present to the eye of the ordinary observer a different effect from anything that preceded it, and render the article to which it is applied

pleasing, attractive, and beautiful; there must be something akin to genius, an effort of the brain, as well as the hand."

A comparison of the patent in suit with other prior dispensers, particularly the Ajax dispenser, exhibited in Court, we think, rather clearly discloses that the Emerson design patent fails to meet this test.

The Emerson design patent, therefore, must be deemed void for anticipation and lack of invention.

We, accordingly, affirm the decree of the lower court to the extent that this decree holds the Ericson cup patent (No. 1940406) invalid and the Emerson design patent (No. 118578) invalid; while we reverse this decree to the extent of its holding that the Emerson cup dispenser patent (No. 2206838) is valid. Our decision that all three of the patents in suit are invalid makes it unnecessary for us to pass upon other questions involved.

Affirmed in part; reversed in part.