51 CCPA
**Application of Albert A. CARLETTI and Welsh C. WHITTLESEY.**

**Patent Appeal No. 7039.**

United States Court of Customs and Patent Appeals.

March 19, 1964.

Herbert Berl, Washington, D. C., for appellants.

Clarence W. Moore, Washington, D. C. (George C. Roeming, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, SMITH, and ALMOND, Judges.

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection of the claim in an application for a design patent, serial No. 56,122, filed May 28, 1959, for "GASKET."

We do not agree with the rejection predicated on the two prior art references because of obviousness of the design under 35 U.S.C. 103.

The cited references are:

Mixer     301,512     July 8, 1884
Thomas Somerville Co. Catalog No. 52A, (c) 1952, page 136, upper left hand corner, spud washer.

The washer of the Somerville Co. catalog (Lavelle Flanged Spud Washer) has a radially-extending flange and a cylindrical portion around the opening, which portion is much higher than the radial flange is wide. There are no ribs or grooves anywhere on it. It does not have even the general proportions of appellants' washer and in no way resembles it in appearance.

The Mixer patent of 1884 on a pipe coupling discloses an absolutely flat lead

washer to be inserted between two pipe-end "coupling plates" on which *plates* there are concentric circular corrugations. Only when the pipe coupling is assembled are grooves impressed in the flat lead washer, which is never seen again until the assembly is broken down, if it ever is. Were a rubber washer used in place of the lead, moreover, upon disassembly it would again be flat, due to its resiliency. There is, therefore, no realistic disclosure of a washer or gasket as a separate article having any grooves or ribs. Only the spent lead washer is shown to have a surface other than flat. Neither do we find the slightest hint in this patent of any "innermost rib * * * fractionally higher than the others resulting in a slightly deeper groove around it."

Even combining the reference disclosures, therefore, fails to suggest appellants' design.

One of the examiner's principal grounds of rejection was that the differences between appellants' gasket and the prior art, to which differences we must look in deciding whether patentable invention exists, are *dictated by functional requirements*, "i. e., to make the article fit the place where it is to be used and to increase the functional utility thereof rather than to appeal to the esthetic sense." We have quoted from the examiner's final position as stated in his Answer. Cases in support of this rejection were cited. The board affirmed this rejection saying:

> "The instant design *differs* from the Somerville publication essentially by the plurality of concentric annular ribs and by the recessed groove. These features, however, are added to the Somerville citation [disclosure] essentially for *purely functional purposes*, the ribs to effect better sealing action and the groove primarily to prevent a fileting action in the mold. It has been held in Court decisions including Connecticut Paper Products Co. -vs- New York Paper Co. [4 Cir.], 127 F.(2d) 423, 53 USPQ 271, that the addition

of features placed upon an old design for *purely functional purposes* does not ordinarily render a design patentable. [Emphasis added.]

> "The Examiner's rejection of the appealed claim as being unpatentable over the reference is sustained."

It is thus seen that the *functionality* of the elements asserted to *distinguish* the design from the prior art—as distinguished from the obviousness of those features—was a ground, if not a principle ground, of rejection. The Patent Office Solicitor's brief takes the same position.

While it cannot be said that the Patent Office has made out an iron-clad case of the functionality of the features relied on for patentability, more than a good case has been made out and the appellants have failed to refute it. In the first place we have in the record the military specification covering this gasket, MIL–P–40068, 9 June 1959, containing engineering drawings in great detail, specifying the exact position, dimensions, and tolerances of the grooves and ribs etc., without the slightest suggestion that they serve in any way as ornamentation. In the second place, appellants' brief says:

> "The design was created at the U. S. Army Quartermaster Research and Engineering Center, Natick, Massachusetts, in the course of appellants' employment by the Government of the United States as technologists. Its intended use is as a component of a closure assembly for containers, such as gasoline drums."

The record further shows such drums to be the common 55 gal. drums and the gasket to be for the threaded plug which closes the bung hole therein.

It seems naive in the extreme to believe that anyone would try to "ornament" the rubber gasket on the under side of the bung cap for a gasoline drum, notwithstanding the seriocomic legal arguments presented by counsel for the Department of the Army. Common sense and but a slight familiarity with the requirements of gaskets both point to the

obvious functionality of the groove and ribs on the gasket. In a letter to the Commissioner of Patents in this application on August 1, 1960, appellants' counsel said:

"* * * the current design resulted from a development program which was inaugurated more than a year prior to publication of MIL–P–40068. Numerous gaskets were *designed* and subjected to *severe testing* under all service conditions including tropical and arctic. Only a device which passes all tests and experiments is finally standardized in a procurement specification." [Emphasis added.]

The gasket at bar was standardized in a specification. This does not bespeak the existence of design in anything other than the sense of engineering "design," and certainly contraindicates the existence of the "ornamental design" referred to in 35 U.S.C. § 171, under which a patent is here sought.

▮ It is clear that appellants never invented an "ornamental design." The appearance of appellants' gasket seems as much dictated by functional considerations as is the appearance of a piece of rope, which, too, has ribs and grooves nicely arranged. The fact that it is attractive or pleasant to behold is not enough. Many well-constructed articles of manufacture whose configurations are dictated solely by function are pleasing to look upon, for example a hex-nut, a ball bearing, a golf club, or a fishing rod, the pleasure depending largely on one's interests. But it has long been settled that when a configuration is the result of functional considerations only, the resulting design is not patentable as an ornamental design for the simple reason that it is not "ornamental"—was not created for the purpose of ornamenting. Walker on Patents, Deller Ed., Sec. 138, p. 434; Connecticut Paper Products case, cited by the board, supra, Hueter v. Compco Corp., 7 Cir., 179 F.2d 416; Applied Arts Corp. v. Grand Rapids Metalcraft Corp., 6 Cir., 67 F.2d 428; In re Garbo, 287 F.2d 192, 193, 48 CCPA 845, 848. In the latter case this court said:

"It is true * * * that a design may embody functional features and still be patentable, but in order to attain this legal status under these circumstances, the design *must have an unobvious appearance, distinct from that dictated solely by functional considerations.*" [Emphasis added.]

That is the principle which is believed to apply here.

Neither does it suffice to argue, as appellants do, that the ribs and grooves *could* have been less gracefully arranged than they are in their actual "balanced relationship." If obviousness enters into this case, it is at this point. If it is desired to employ a groove for flexibility and three concentric ribs to make a good seal on a flat drum head, what is more obvious than to arrange them with approximately equal spacing, as was done? But it was done without thought of ornament. The creation or origination of an ornamental design does not reside in the mere *avoidance* of dissymmetry.

For the foregoing reasons the decision is affirmed.

Affirmed.

WORLEY, Chief Judge (concurring).

It is to be hoped that the instant appeal will culminate the final phase of an extended campaign by the United States Army against the United States Patent Office and convince the former of the futility of further pursuit. The Army objective appears to be to carve out, isolate and contain a certain area of the public domain in which the Patent Office stoutly contends the Army has no territorial rights as against the paramount interest of the public.

The initial probing actions by the Army have been repulsed by shock troops of the Patent Office largely on the strength of certain intelligence provided by one Somerville and a William M. Mixer. Additional sorties have proved equally fruitless, as was the final attack

launched against the main force. Thus far the pen has proved mightier than the sword.

In more "patentese" terms, the examiner and the board have expressly held that the Somerville spud washer and the Mixer washer would make appellant's device obvious to one of ordinary skill in this particular art. Those references are more than ample to show that the instant gasket is innocent of any patentable characteristics. Indeed, the Mixer washer is particularly appropriate because, aside from its spaced grooves in common with the instant gasket, in its actual use it is as invisible to the eye as is appellant's bunghole gasket.

There can be no doubt that the rejection is clearly correct and should be affirmed.