FMC CORPORATION and Vulcan Equipment Company, Ltd., Plaintiffs–Appellants,

v.

HENNESSY INDUSTRIES, INC., Defendant/Cross–Appellant.

Nos. 87–1268, 87–1283.

United States Court of Appeals, Federal Circuit.

Dec. 30, 1987.

Gerald D. Hosier, of Hosier & Sufrin, Chicago, Ill., argued for plaintiffs-appellants. With him on the brief was Richard B. Megley, of the FMC Corp., Chicago, Ill.

Theodore W. Anderson, of Neuman, Williams, Anderson & Olson, Chicago, Ill., argued for defendant/cross-appellant. With him on the brief were William J. Birmingham, Michael O. Warnecke and Hugh A. Abrams, of Neuman, Williams, Anderson & Olson, Chicago, Ill. Also on the brief were Thomas H. Morsch and Robert R. Watson, of Sidley & Austin, Chicago, Ill.

Before MARKEY, Chief Judge,
RICH and MAYER, Circuit Judges.

MARKEY, Chief Judge.

FMC Corporation and Vulcan Equipment Company, Ltd. ("FMC") appeal from that part of a final judgment of the United States District Court for the Northern District of Illinois, 650 F.Supp. 688, 2 U.S.P.Q.2d 1479 (N.D.Ill.1986) (Moran, J.), denying FMC's claims for attorney fees. Hennessy Industries, Inc. ("Hennessy") cross-appeals from that part of the judgment holding its United States Patent No. 3,225,801 (Tabordon patent) invalid and its United States Patent No. 3,225,800 (Strang patent) and design Patent No. 243,551 (Wood patent) not infringed. We vacate that part of the judgment relating to inequitable conduct in the prosecution of the Wood patent, and affirm the judgment in all other respects.

## I. Background

The introduction of safety rims and the advent of the tubeless tire increased the physical effort necessary to remove a tire from a wheel. Gradually, full-power tire changers with dual-power-sources replaced manual and semi-power single-power-source models. The three patents in suit relate to full-power, single-power-source changers. The Tabordon and Strang patents expired in 1983. The Wood design patent will expire in 1991.[1]

On November 11, 1979, FMC sued for a declaratory judgment that Hennessy's patents were invalid, unenforceable because of

---

1. Inventor John F. Wood is no relation to Hennessy's patent attorney James C. Wood.

inequitable conduct, and not infringed by FMC's tire changers. FMC's complaint included claims of antitrust violation and unfair competition. Hennessy counterclaimed for infringement of each patent.

The district court separated the patent claims for trial. A bench trial began June 15, 1984. On February 26, 1987 the district court, "pursuant to Fed.R.Civ.P. 54(b)," directed entry of the following final judgment:

> Tabordon U.S. Patent No. 3,255,801 is invalid, although not otherwise unenforceable; Strang et al. U.S. Patent No. 3,255,800, if valid, is enforceable but not infringed; Wood et al. U.S. Patent No. Des. 243,551 is valid and enforceable, but not infringed. Further, in view of the court's findings, all claims for damages and for attorneys' fees with respect to these two counts are denied.[2]

The Order directing entry of judgment expressly adopted the court's December 30, 1986 Memorandum and Order as its findings of fact and conclusions of law. Fed.R. Civ.P. 52(a). Familiarity with that comprehensive Memorandum and Order is presumed. We need not, therefore, replicate the district court's excellent description of the facts and evidence.

## II. *Issues*

(1) Whether the district court abused its discretion when it denied FMC's request for attorney fees.[3]

---

**2.** The "two counts" were defined in the order directing judgment as "count I of the amended and supplemental complaint and count I of defendant's counterclaim."

**3.** Though FMC vigorously argues that all the patents are unenforceable, expiration of the Tabordon and Strang patents, and our affirmance of the parts of the judgment holding the Tabordon patent invalid and the Strang and Wood patents not infringed, render the enforceability question moot on this appeal. The trial court addressed the "fraud" issue because "its resolution will have an impact upon further proceedings," e.g., FMC's antitrust count. We address the inequitable conduct issue only because it relates to the denial of attorney fees. *FMC Corp. v. Manitowoc Co.*, 835 F.2d 1411, 1413 (Fed.Cir.1987). "Inequitable conduct" may ren-

(2) Whether the district court erred in declaring the Tabordon patent invalid under 35 U.S.C. § 103.[4]

(3) Whether the district court erred in finding the Strang and Wood patents not infringed.

## III. *Opinion*

### (1) Attorney Fees

FMC does not mention the district court's discretion, but says its request for attorney fees should have been granted because the "no inequitable conduct" conclusion cannot stand.

### The Tabordon Patent

The materiality of the semi-power machine and prior sales of the full-power machine are not in serious dispute. Rather, the issue is whether, in all the circumstances, Hennessy can be charged with knowledge of the materiality of that information. FMC admits that the district court correctly recited the legal standards related to inequitable conduct, but then argues that the court misapplied those standards. That misapplication, says FMC, caused the court to ignore evidence which "compels" a conclusion of inequitable conduct.

■ Specifically, FMC alleges that the district court erred in: (1) evaluating the statutory bar "on sale" evidence; (2) failing to consider and properly weigh Hennessy's "litigation conduct" and "consistent practice" of inequitable conduct; (3) assess-

---

der a patent unenforceable, but differs from the "fraud" required to support a "Walker Process" type antitrust claim. *Korody–Colyer Corp. v. General Motors Corp.*, 828 F.2d 1572, 1578, 4 U.S.P.Q.2d 1203, 1207–08 (Fed.Cir.1987). Nonetheless, any effect our conclusion respecting inequitable conduct may have on further proceedings is a matter for the trial court.

**4.** Because we affirm that part of the judgment declaring the Tabordon patent invalid in view of the district court's obviousness determination, 35 U.S.C. § 103, we need not discuss the parties' arguments respecting validity of that patent under 35 U.S.C. § 102(b).

Because we affirm that part of the judgment finding no infringement of the Strang and Wood patents, FMC's argument that those patents are invalid is moot.

ing the import of the Lowell letter; (4) concluding that circumstances known to attorney Wood before he filed the Tabordon application did not require additional inquiry; (5) stating that the issues in a 1965 interference and in the application for the Tabordon patent were different; (6) finding Tabordon's limited education caused his failure to recognize the "materiality" of his semi-power machine, when Tabordon knew it was related to his full-power machines; (7) concluding that attorney Binish did not prosecute the application for the Tabordon patent because he was "too busy;" (8) applying to the intent issue a subjective standard that made "mere denials not only controlling, but dispositive;" (9) failing to define or apply a reasonable person standard and ignoring circumstantial evidence of intent; (10) "virtually requir[ing] direct evidence of intent to overcome protestations of ignorance and innocence, deeming direct evidence necessary to prove 'culpability';" (11) engaging in "unwarranted presumptions and surmise" as to what certain actors might have done; and (12) holding Tabordon and Wood to no duty to inquire.

FMC's "kitchen sink" of duplicative and overlapping assertions does injustice to the considered opinion of the district court. Seizing upon isolated words and phrases in that opinion, FMC forgets that this court reviews judgments, not phrases in opinions. *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1540, 218 U.S.P.Q. 871, 880 (Fed. Cir.1983). Language in an opinion may in light of the record reflect error, but that is not true here. In sum, the conclusive scenario FMC erects around events that were over twenty years old when suit was filed is simply not supported by the record.

FMC argues, for example, that the district court applied an "on hand" test for determining the "on sale" question because it "failed to consider" the distribution agreement and other evidence of record. This court has held that failure to mention does not mean failure to consider when the evidence supplies support for the district court's determination. *Medtronic Inc. v. Daig Corp.*, 789 F.2d 903, 906, 229 U.S.P.Q. 664, 667 (Fed.Cir.), *cert. denied,* — U.S. ——, 107 S.Ct. 402, 93 L.Ed.2d 355 (1986).

Moreover, FMC impermissibly leaps to an assumption that an "on sale" finding would automatically establish inequitable conduct in this case.

FMC's argument that the district court "failed to consider" Hennessy's "litigation conduct" and "consistent practice" of inequitable conduct is equally meritless. Hennessy's resistance to discovery was not reprehensible "litigation conduct" in this case. *See USM Corp. v. SPS Technologies, Inc.*, 694 F.2d 505, 508–10, 216 U.S.P. Q. 959, 962–63 (7th Cir.1982). Hennessy's "practice" with other applications is not relevant. As correctly stated by the district court, Hennessy did not assert the Foster patent against FMC and therefore "[FMC] can not use Foster to invoke an unclean hands defense to the entire judicial proceeding." 650 F.Supp. at 698, 2 USPQ2d at 1486. *See SSIH Equip. S.A. v. United States Int'l Trade Comm'n*, 718 F.2d 365, 378–79, 218 U.S.P.Q. 678, 689–90 (Fed.Cir.1983).

FMC has not shown the presence of clear error in the district court's findings that: (a) Tabordon did not recognize the relevance of the semi-power machine; and (b) that Tabordon and attorney Wood believed March 14, 1961 to be the earliest conceivable sale of the full-power machine. *See Reactive Metals & Alloys Corp. v. ESM, Inc.*, 769 F.2d 1578, 1584, 226 U.S.P.Q. 821, 825 (Fed.Cir.1985) (inventor's awareness of facts establishing "on sale" bar outweighed by his misunderstanding and disregard of the significance of the facts). FMC says clear error occurred when the district court did not draw the inferences FMC would have us draw from the Lowell letter, the Continental Distributors agreement, the 1965 interference, Hennessy's "knowledge" of Tabordon's semi-power machine, the roles of Binish and others in prosecuting the application for the Tabordon patent, and the circumstances surrounding the filing of the application. We find, however, nothing in the record that would preclude the district court from drawing such inferences as may be encompassed in the findings it made. Thus, FMC has not shown *any* district court finding to

have been clearly erroneous. As occurred in *FMC Corp. v. Manitowoc Co.*, 835 F.2d 1411, 1417 (Fed. Cir.1987), FMC ignores rule 52(a) and misperceives the roles of fact and law in the judicial process. *See Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574–75, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985).

The district court's findings fully support the court's conclusion that FMC did not prove inequitable conduct by clear and convincing evidence. That FMC alleges inequitable conduct against a great number of people does not diminish the burden of proof which it must meet as to each of them.[5]

Unable to show any finding to have been clearly erroneous, FMC centers its fire on what it calls the district court's "wholly subjective and unacceptably low legal standard" in evaluating intent. As evidence, FMC says the district court did not refer specifically to "gross negligence" in its opinion.

■■■ FMC correctly states that a determination of threshold intent may involve gross negligence as a factor. *See J.P. Stevens & Co. v. Lex Tex Ltd.*, 747 F.2d 1553, 1560, 223 U.S.P.Q. 1089, 1092 (Fed.Cir. 1984), *cert. denied*, 474 U.S. 822, 106 S.Ct. 73, 88 L.Ed.2d 60 (1985). This court has affirmed conclusions of inequitable conduct where the lower tribunal's intent finding was supported by a finding of gross negligence. *See Driscoll v. Cebalo*, 731 F.2d 878, 884–85, 221 U.S.P.Q. 745, 750–51 (Fed. Cir.1984). FMC incorrectly assumes, however, that subjective good faith can play *no* role in a court's ultimate determination of the intent issue, and that every district court finding of "gross negligence" would necessarily *compel* a finding of "intentional" nondisclosure. *See Allen Archery, Inc. v. Browning Mfg. Co.*, 819 F.2d 1087, 1095, 2 U.S.P.Q.2d 1490, 1495–96 (Fed.Cir.1987); *Laitram Corp. v. Cambridge Wire Cloth*

*Co.*, 785 F.2d 292, 294, 228 U.S.P.Q. 935, 936 (Fed.Cir.) (effect of subjective good faith on the balance of intent and materiality), *cert. denied*, —— U.S. ——, 107 S.Ct. 85, 93 L.Ed.2d 39 (1986); *Kansas Jack Inc. v. Kuhn*, 719 F.2d 1144, 1151–52, 219 U.S. P.Q. 857, 861–62 (Fed.Cir.1983); *contra FMC Corp. v. Manitowoc Co.*, at 1415 n. 7 ("overwhelming showing of materiality plus an applicant's knowledge of that materiality *may* raise an inference of intent so strong as to require a convincing showing of subjective good faith to offset it") (emphasis supplied); *Driscoll*, 731 F.2d at 885, 221 U.S.P.Q. at 751.

That a finding has often followed from a set of facts does not reduce that finding to mere tautology effective without regard to all the evidence. In *J.P. Stevens*, this court reversed the district court's conclusion of no inequitable conduct. Noting the district court's findings of gross negligence and "a high degree" of materiality, this court was careful to point out that Lex Tex had submitted *no* evidence of subjective good faith to offset evidence of gross negligence. 747 F.2d at 1567, 223 U.S.P.Q. at 1098.

That the district court made no *explicit* gross negligence finding does not constitute reversible error in light of its findings of subjective good faith. As FMC concedes, the district court correctly stated the legal standards for inequitable conduct. We find nothing of record that would enable FMC to carry its appellate burden on its assertions that the district court misapplied those standards, ignored circumstantial evidence of intent, virtually required direct evidence of intent, or failed to consider objective evidence of intent.

■■ FMC's argument that Hennessy, Tabordon, Wood, and others breached a duty to inquire more than they did about the semi-power machine and the earliest sale of the full-power machine is equally unavailing. Assuming, without deciding, that

---

5. FMC points to the district court's statement that "[t]he notion of culpability is ... antithetic to the concept of imputed knowledge." Yet the district court's statement is absolutely accurate when read in context. One attempting to prove inequitable conduct must prove by clear and convincing evidence that the conduct of the person *charged* was inequitable. The district court's statement is readable as responsive to FMC's argument that may be paraphrased, "A knew of X; A talked to B; therefore, B knew of X."

there may be circumstances that would raise a duty to inquire,[6] FMC's web of conjecture, inference, and innuendo does not create those circumstances. We agree with the district court that "nothing known to [these individuals] created a duty to engage in the searching inquiry and investigation undertaken by [FMC] twenty years later."

The district court committed no error, of either fact or law, in concluding:

[FMC] has not proved fraud [sic, inequitable conduct] in the Patent Office respecting the Tabordon patent by clear and convincing evidence.

650 F.Supp. at 697, 2 U.S.P.Q.2d at 1485.

### The Strang Patent

FMC says the district court failed to follow the rule that for inequitable conduct purposes "claims are given their broadest reasonable interpretation in light of the specification." *J.P. Stevens*, 747 F.2d at 1556, 223 U.S.P.Q. at 1098. However claim 5 be interpreted, FMC's argument that Hennessy should have cited its 990 model is unavailing. Conspicuously absent is even a threshold level of intent. Hennessy cited Brosene, a material reference, and its 990 model was disclosed in Hennessy's Foster application that was pending before the same examiner at the very same time. *See Kimberly–Clark v. Johnson & Johnson*, 745 F.2d 1437, 1456, 223 U.S.P.Q. 603, 616–17 (Fed.Cir.1984). FMC's reliance on *Driscoll*, 731 F.2d at 885, 221 U.S.P.Q. at 751, is misplaced. That case dealt only with the question of whether an examiner is presumed aware of all art in the class and subclass searched.

### The Wood Patent

The district court's denial of FMC's request for attorney fees expended in rela-

tion to the Wood patent rested on its conclusion that FMC had not proven inequitable conduct during prosecution of the application that resulted in the Wood patent. That conclusion, in turn, rests entirely on prosecution history evidence that the examiner searched the class and subclass which contained the omitted information (a publication having pictures of the Magnum 001 and Model 20.20 devices). The district court made no findings on whether a reasonable examiner would have considered the omitted information "important," whether the omitted information was "material" for other reasons or was cumulative to the cited Simpkins patent, whether Hennessy knew or should have known of the materiality of the omitted information, or whether Hennessy had the requisite intent to deceive.

■ The district court stated that "when the examiner represents that he has reviewed specific prior art the duty of candor does not require the applicant to advocate that the examiner should have cited that art as material when he fails to do so." 650 F.Supp. at 702, 2 U.S.P.Q.2d at 1489. Assuming, without deciding, the correctness of that statement, it is inapplicable in this case. The examiner here did *not* represent that he had "reviewed specific prior art." He represented only that he had searched class D54 and subclass 13R in which the omitted information (prior art) was contained. That indication of a generalized search would not of itself relieve Hennessy from the duty of candor. *Driscoll*, 731 F.2d at 885, 221 U.S.P.Q. at 751.

■ Hennessy argues that the examiner was "fully cognizant of the specific prior art at issue" because "in his examination of Curtis U.S. Design Patent 232,763, examiner Douglas cited the Simpkins Design Pat-

---

6. As a general rule, there is no duty to conduct a prior art search, and thus there is no duty to disclose art of which an applicant could have been aware. *American Hoist & Derrick Co. v. Sowa & Sons*, 725 F.2d 1350, 1362, 220 U.S.P.Q. 763, 772 (Fed.Cir.), *cert. denied*, 469 U.S. 821, 105 S.Ct. 95, 83 L.Ed.2d 41 (1984). However, one should not be able to cultivate ignorance, or disregard numerous warnings that material information or prior art may exist, merely to avoid actual knowledge of that information or prior art. When one does that, the "should have known" factor becomes operative. *See FMC Corp. v. Manitowoc Co.*, at 1415–16; *compare Chromalloy American Corp. v. Alloy Surfaces Co.*, 339 F.Supp. 859, 873–74, 173 U.S.P.Q. 295 (D.Del.1972) *with Reactive Metals & Alloys Corp. v. ESM Inc.*, 769 F.2d 1578, 1584, 226 U.S.P.Q. 821, 825 (Fed.Cir.1985) *and American Hoist*, 725 F.2d at 1362, 220 U.S.P.Q. at 772.

ent 213,914 (later cited in the Wood design patent), and the *Modern Tire Dealer 1973* publication, page 38." That argument must fail because Hennessy had no relation whatever to the prosecution of the Curtis patent, and the Curtis design patent issued long before the Wood application was filed. As the district court said, the duty of candor requires "more than an assumption that the examiner will recall something from a previous application." 650 F.Supp. at 702, 2 U.S.P.Q.2d at 1489.

The case must be remanded to enable the district court to make findings on materiality and intent, and, in light of those findings, to determine again the presence or absence of inequitable conduct in the prosecution of the application that resulted in the Wood patent.[7]

### (2) Invalidity

In its cross-appeal, Hennessy argues that the district court erred in concluding that the invention claimed in the Tabordon patent would have been obvious in view of the prior art because the court: did not consider the invention as a whole; combined the teachings of the prior art with no suggestion of such combination in the art; and overlooked "persuasive" objective evidence of nonobviousness.

The record refutes each of Hennessy's contentions. At no time did the court "dissect" the invention or fail to consider it as a whole. The court correctly viewed the semi-power machine as prior art, and its careful discussion of that machine and the Bishman prior art patent (U.S. Patent No. 3,032,094) did not represent an improper combination of pieces of prior art. The court's finding that the two-power-source configuration "created at least a perceived safety hazard," coupled with the art's recognition of the increasing force necessary to remove tires, supplied the necessary suggestion. Finally, though the district court did not refer to Hennessy's objective evidence, *see Medtronic*, 789 F.2d at 906,

229 U.S.P.Q. at 667, that evidence is clearly not so "persuasive" as to warrant either reversal or remand.

### (3) Infringement

### The Strang Patent

Hennessy contends the district court "misapplied the reverse doctrine of equivalents to find no infringement" in conjunction with early Vulcan tire changers and later Vulcan and FMC machines, when using special spacers or shims for handling "outsize" wheels. Hennessy's difficulty is that the district court did not rely on the reverse doctrine of equivalents. It found that there was no literal infringement. Hennessy has not shown that finding to have been clearly erroneous. Hence the district court's alternative finding and Hennessy's attack on it are irrelevant.

### The Wood Patent

Hennessy says the district court applied a "point of novelty test," focusing on "specific" and "minute" detail differences between the patented and accused designs, rather than on "general" and "overall" similarities. First, infringement requires appropriation of the novelty in the patented device. *Litton Sys., Inc. v. Whirlpool Corp.*, 728 F.2d 1423, 1444, 221 U.S.P.Q. 97, 109 (Fed.Cir.1984). Second, Hennessy argues that the district court's focus on "subtle differences" caused the court to disregard the "substantially-the-same" test adopted by the Supreme Court in *Gorham v. White*, 81 U.S. (14 Wall.) 511, 528, 20 L.Ed. 731 (1871). The district court did not do what Hennessy alleges. Contrary to Hennessy's intimation, differences between patented and accused designs are not irrelevant. Courts should take into account similarities *and* differences in determining "if in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to

---

7. As above indicated, *note* 3, the question remains viable only in connection with FMC's request for attorney fees. If the district court determines that inequitable conduct did occur in the prosecution of the application that result-

ed in the Wood patent, it will presumably reconsider its denial of FMC's request for the portion of its attorney fees incurred by FMC in relation to the Wood patent.

deceive such an observer, inducing him to purchase one supposing it to be the other." *Id.; see Unette Corp. v. Unit Pack Co.,* 785 F.2d 1026, 1028–29, 228 USPQ 933, 934 (Fed.Cir.1986). The district court took precisely that approach in finding that Hennessy had not proved infringement. That FMC wanted its tire changer to "look like [Hennessy's]" is irrelevant where as here the final product does not infringe the patented design. Hennessy has not shown the finding that its Wood patent was not infringed to have been clearly erroneous.

### IV. *FMC's Motion To Strike Portions of Hennessy's Reply Brief*

FMC moved to strike portions of Hennessy's reply brief because that brief was not "confined to the issues presented by [Hennessy's] cross-appeal." Some of FMC's cited portions do and others do not go beyond the scope of the cross-appeal. Thus, the motion to strike is *denied.* This court has, however, ignored those portions of Hennessy's reply brief that do go beyond the scope of its cross-appeal.

### V. *Conclusion*

We affirm the portions of the judgment that hold the Tabordon patent invalid, that find the Strang and Wood patents not infringed, and that hold no inequitable conduct occurred in connection with the prosecution of the applications that resulted in the Tabordon and Strang patents. We vacate that part of the judgment that holds no inequitable conduct occurred in connection with the prosecution of the application that resulted in the Wood patent and remand to enable the district court to make findings and a determination in light of those findings.

AFFIRMED–IN–PART, VACATED–IN–PART AND REMANDED–IN–PART.